No. 88-182

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN THE MATTER OF THE APPLICATION OF
ROBERT PETERSON ON BEHALF OF B.S.M,
a youth.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

For Petitioner:

Robert M. Peterson argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Clay Smith argued, Asst. Atty. General, Helena
David G. Rice, County Attorney, Havre, Montana

---

Submitted: September 8, 1988

Decided: January 6, 1989

Filed:

ED SMITH
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

This petition for writ of habeas corpus arises from the Youth Court of the Twelfth Judicial District. The Youth Court determined that B.S.M. was a delinquent youth. The Youth Court committed B.S.M. to the Department of Family Services, Linda K. Walker, Regional Administrator, for placement in an appropriate facility. The petitioner alleges that the Department of Family Services does not have the authority to place delinquent youths, but that placement lies with the judiciary.

The petition for writ of habeas corpus is denied.

The following issues are presented:

1. Whether the decision by the Department of Family Services to place the delinquent youth in the Pine Hills School for Boys was a violation of the Separation of Powers Clause, Art. III, Sec. 1, 1972 Mont. Const.

2. Whether the youth was denied due process of law when the Department of Family Services placed him in the Pine Hills School for Boys without an adversarial hearing to decide proper placement.

The following facts are uncontested. B.S.M. was sixteen years old at the time of commitment to the Department of Family Services (Department). On May 7, 1987, B.S.M. was charged with burglary, theft, and possession of drugs. In addition, he was charged with the unauthorized use of a motor vehicle, and refusal to obey the reasonable and lawful demands of his parents. The allegations were admitted by the youth on May 21, 1987. Thereafter, the judge ordered extensive psychological evaluation for B.S.M., pursuant to §41-5-523(2), MCA, including forty-five days at the Youth Evaluation Program in Great Falls. A consent decree was proposed to the Youth Court by both parties requesting that

2

the youth be placed on probation for one year in the custody of his mother. The decree was approved on November 3, 1987.

A second petition was filed on February 1, 1988, by the deputy county attorney from Hill County, alleging that B.S.M. had committed fifteen counts of theft, burglary, criminal trespass, unlawful possession of an intoxicating substance and of being a runaway between December 31, 1987, and January 17, 1988. The allegations were admitted by the youth on February 2, 1988, and by order of the Youth Court on February 3, 1988, B.S.M. was committed to the Department's care until the age of eighteen.

Upon entry of the Youth Court commitment order, the chief probation officer for the Twelfth Judicial District issued a referral under ARM § 11.7.404(2) to the Youth Placement Committee for the district. The Youth Placement Committee recommended that B.S.M. be placed in the Pine Hills youth correctional facility. The Department accepted the recommendation on February 22, 1988, pursuant to § 41-5-527, MCA. B.S.M. petitioned this Court for writ of habeas corpus.

In 1987, the Montana legislature created a new state agency, the Department of Family Services. Section 2-15-2401, MCA. The purpose of the Department is to develop and maintain consolidated programs and services for youth and families, within available resources. Section 52-1-101 et seq., MCA (1987). The new statute delegates authority to the Department for supervision, care, and control of youth, powers formerly held by the youth courts. Section 52-1-103, MCA. Section 41-5-523, MCA, gives authority to the Youth Court to decide the commitment of delinquent youths and youths in need of supervision. After disposition by the Youth Court, § 41-5-523(1)(b) now leaves with the Department authority to place the youth in an appropriate facility.

3

The first issue is whether the decision by the Department of Family Services to place the delinquent youth in the Pine Hill School for Boys was a violation of the Separation of Powers Clause, Art. III, Sec. 1, 1972 Mont. Const.

According to the petitioner, if the decision to incarcerate the delinquent youth is made by the Department, the decision is not being made by the proper authority. The legislature created the Department and the governor appoints the Department director, making it an executive agency. Therefore, the executive branch is making the decision and this is a violation of the Separation of Powers Clause. Art. II, Sections 15, 17, and 24, 1972 Mont. Const. Petitioner contends the judiciary is the proper decision-making body for the placement of delinquent youths.

We hold that there is no violation of the Separation of Powers Clause in this case. There are a series of steps to the dispositional/sentencing phase of § 41-5-523. The Youth Court is solely responsible for choosing which of the various alternatives in § 41-5-523 is appropriate in each individual case. The alternatives are: § 41-5-523(1)(a), place the youth on probation; (1)(b), commit the youth to the department; (1)(c), "order such further care and treatment or evaluation that does not obligate funding from the department without the department's approval;" (1)(d), order restitution by the youth or his parents; (1)(e), "impose a fine as authorized by law if the violation alleged would constitute a criminal offense if commited by an adult;" (1)(f), require the performance of community service; (1)(g), require the youth or his parents to receive counseling; (1)(h), require medical and psychological evaluation of the youth or his parents; (1)(i), "require the parents, guardians, or other persons having legal custody of the youth to furnish such services as the

4

court may designate;" or (1)(j), require "such further care, treatment, evaluation, or relief that the court considers beneficial to the youth and the community."

Section 41-5-523(1)(b) allows the judge to place the youth with the Department. Once the Youth Court judge decides that the delinquent youth is to be put in the hands of the Department, then the court has limited control over the placement of the youth.

There is no constitutional violation here by giving the Department the authority to place the child. The decision to commit the youth is made by the court. It then hands the placement duties over to the Department.

The power of the Youth Court is not diminished through granting the Department placement power of a delinquent youth. The court has the exclusive power to sentence the youth. If the court chooses to place the youth with the Department, it is just one of the possible proper dispositions. Furthermore, the court reserves residual power, pursuant to § 41-5-523(5), which allows it to revoke or modify the disposition of the Department at any time, upon notice to the Department and subsequent hearing. This assures that the youth retains his rights in case the Department exceeds or abuses its authority.

We conclude that § 41-5-526, MCA, provides the Youth Court with authority to order the delinquent youth to be placed with the Department. It is then up to the Department to place the youth in a proper setting. We also conclude that the Youth Court has the authority to review the decision of the Department to determine if the placement is in the best interests of the minor. See: State v. A.C. (Alaska App. 1984), 682 P.2d 1131.

It is within the power of the legislature to limit the placement power of the Youth Court. Public policy dictates

5

that as the voice of the people, the legislature has the power to make placement of youths an administative power. If the people choose to turn full power of placement back to the Youth Court, they will do so through the elective process. This Court will not replace legislative discretion with our own.

The petitioner is concerned with the fact that the same body which now places delinquent youths also holds the purse strings. Under § 41-5-526, MCA, one of the requirements in placing the youth is to review all relevant available resources. Section 41-5-102(2), MCA, though, puts forth as the primary goal the supervision, care, and rehabilitation of the youth, not financial considerations. Petitioner contends that incarceration expenses are often less than rehabilitation expenses and this will affect the decision of the Department, who pays for the care--that is, Pine Hills will be used more readily than other more expensive types of foster care. However, there is no showing that a youth will receive inadequate care because he is sent to Pine Hills rather than a home or an out-of-state facility. The Department must consider all available resources and, if it concludes that Pine Hills is the appropriate facility, the placement will be regarded as proper, absent a finding of abuse of discretion by the Youth Court.

Cases from other jurisdictions which have similar youth placement services, have commented on the propriety of an administrative agency holding the authority to place delinquent youths. In In Interest of G.B. (Neb. 1988), 418 N.W.2d 258, the Nebraska Supreme Court held that it is within the child's best interest to grant the power to place the youth with the Department of Social Services. The Nebraska statute is identical to § 41-5-523.

6

Respondent shows that there are other state courts which have accepted the proposition that a youth court can commit a youth to a state agency for supervision and treatment. For example, in State v. Dennis F. (N.M.Ct.App. 1986), 725 P.2d 595, 597, the court held:

> Once the children's court has committed a child to the custody of the department, the jurisdiction of the court is ended, and the Department of Corrections is responsible for the care and rehabilitation of the delinquent child.

Other jurisdictions have passed upon statutes that grant placement authority with a state agency after commitment by the youth court, see: State v. A.C. (Alaska App. 1984), 682 P.2d 1131; In Interest of C.D.P. (Iowa 1982), 315 N.W.2d 731; In Interest of R.D. (Ga. App. 1977), 234 S.E.2d 680; Craft v. State (S.C. 1984), 314 S.E.2d 330; Dept. of Health & Rehab. v. McGregor (Fla. App. 5 Dist. 1987), 511 So.2d 1096.

The second issue is whether the youth was denied due process of law when the he was placed in the Pine Hills School for Boys by the Department without an adversarial hearing to decide the placement of the youth. Petitioner contends that the youth was deprived of fundamental rights prescribed in the Constitution, including: the right to counsel at all proceedings, the right to confront witnesses, and the right to cross-examine witnesses who prepare the social summary or predisposition report. Counsel for the youth is also concerned that a youth's lawyer will not be allowed into the placement committee hearing to assure that the testimony is not misinterpreted and that no testifying parties unfairly testify against the petitioner.

ARM § 11.7.406(6) states that the youth's attorney may submit a written statement concerning placement and request an opportunity to appear before the committee which makes the

7

recommendation to the Department for the youth's placement. There is no indication that the committee would deny the attorney the right to appear, and in this case the attorney was granted the right to be present.

Petitioner stresses the need for the presence of counsel at the placement of the minor to insure that the conviction and disposition are not based on misinformation or a misreading of court records. However, the attorney is present at the dispositional stage--the hearing in which the Youth Court commits the youth to the Department. The dispositional stage is complete once the court chooses one of the subsections of § 41-5-523, MCA. Beyond commitment of the youth by the court, the delinquent youth has no absolute right to counsel at the placement hearing.

Petitioner asserts that there is danger in allowing the committee to act without the presence of an attorney because of the language in ARM § 11.7.406(7), which states that the committee which recommends placement "may invite persons with specific or special knowledge to provide information to the committee which will assist the committee in developing placement recommendations for the youth." The danger arises because there is no limit to the information available to the committee and there is no opportunity to cross-examine those testifying.

Placement of the youth begins with a recommendation for placement of the youth by the committee created through § 41-5-525. The committee includes experts in the field of child care. The committee members are: "a representative of the department, a representative of a county department of public welfare, a youth probation officer, a mental health professional, and a representative of a school district within the boundaries of the judicial district."

8

§ 41-5-525(2). These people are qualified persons in recommending the placement of a youth.

The youth is not without due process rights at this point. The committee makes a recommendation to the Department, which can choose to accept or reject the recommendation under § 41-5-527. Regardless of the decision of the Department, the Youth Court can modify that decision if the placement is not in the best interests of the child. Moreover, in this case, the youth was sentenced by the judge until the time that he reaches majority. The statute allows for a period of placement and probation until the age of twenty-one. We conclude that B.S.M. was not denied due process.

We deny the petition for writ of habeas corpus.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, dissenting:


I dissent from the foregoing opinion upon the grounds that the 1987 Amendments by the legislature to the Youth Court Act with respect to sentencing and placing juvenile offenders deprives the juveniles of due process, and further the legislation invades the judicial power of the court.

The declared purpose of the Montana Youth Court Act is to provide judicial procedures in which the parties are assured a fair hearing and recognition and enforcement of their constitutional and statutory rights. Section 41-5-102(4), MCA. Punishment, as such is not a purpose of the Act. Rather the Act requires that it be interpreted and construed "to remove from youth committing violations of the law the element of retribution and to substitute therefor a program of supervision, care, rehabilitation, and, in appropriate cases, restitution as ordered by the Youth Court." Section 41-5-102(2), MCA.

One would be blind to reality not to recognize that the 1987 Amendments to the Youth Court Act have the principal purpose of delimiting to the point of elimination any power of the court to provide supervision, care and rehabilitation, except for commitment to the Pine Hills facility.

Refusing to recognize that the Youth Court has been deprived of the ultimate sentencing authority, the majority rely on those provisions of § 41-5-523, MCA, which allow the Youth Court to enter as judgment-making several possible dispositions. The fact of the matter however is that in any case requiring confinement, the Youth Court must commit the youth to the Department of Family Services. Section 45-5-523(1)(b), MCA. The courts power to do anything further is restricted so that it may not act without the approval of

the Department. Thus the Youth Court may "order such further care and treatment or evaluation that does not obligate funding from the Department without the Department's approval." Section 41-5-523(c), MCA. The majority also rely on the possibility that the Youth Court may modify its order at any time. Even that provision however is limited so that "[A]ny order the court may be modified at any time. In the case of a youth committed to the Department, an order pertaining to the youth may be modified only upon notice to the Department and subsequent hearing." Section 41-5-523(5), MCA. What these statutes say is that the Department, an executive agency, has an equal say with the court, a judicial agency, in matters involving sentencing. That is usurpation by the executive of a judicial function.

The due process implications of the Amendments to the Youth Court Act are not adequately met by the majority. Article II, Section 15 of the Montana Constitution states:

> The rights of persons under 18 years of age shall include, but not limited to, all the fundamental rights of this Article unless specifically precluded by laws which enhance the protection of such persons.

In testimony before the House Committee considering the 1987 Amendments, one proponent remarked that "the Youth Court is not a due process court." The legislature may have been under that misapprehension. The State Constitution guarantees due process to persons under 18 years of age as well as to adults.

A review of the Youth Court Act for procedural protections find a great deal of due process rights accorded youths under this Act. The rights accorded youths under this Act have all the trappings of a criminal proceeding especially in light of the loss of freedom if a youth is adjudicated delinquent. Under § 41-5-303, MCA, a youth has a

right against self incrimination, a right to counsel, parents or legal guardians must be immediately notified of a youth's detention, and determination of probable cause must be made in order to detain a youth longer than 24 hours. Section 41-5-309, MCA, provides that a youth may be released on bail and the court shall use the provisions of Title 46 (Criminal Procedure Code) Chapter 9 as guidance. In order to proceed on a formal petition to declare the youth delinquent the youth or his parents must be served with a summons. Section 41-5-502, 503, MCA. Most important, § 41-5-511, MCA, provides that a youth has the right to counsel at all stages of the proceedings. Additionally, youths have the right to confront and cross-examine witnesses, and to the protections against inadmissible evidence, or illegally seized evidence or coerced confessions; the standard of proof is beyond a reasonable doubt and youths must be fully advised of their rights. The 1987 Amendments of the Youth Court Act and the Administrative Rules promulgated by the Department to implement the changes conflict with those rights under the Act.

ARM 11.7.404(3)(8-F) and 11.7.406(7) presents serious problems with regard to admissibility of statements made and the right to confront and cross examine witnesses testifying against the youth. If the people presenting evidence to the Youth Placement Committee did not testify in court, they should not be allowed to present evidence at a later hearing. ARM 11.7.406(6) does not allow for counsel to be present; a counsel may submit a written statement, but this does not guarantee the protection of the youth's rights under the Act, nor is it specifically stated in the rule that a request for an attorney to be present will be granted by the Placement Committee. Thus there is a conflict with § 41-5-511, MCA, which guarantees the youth's right to have counsel present

"at all stages of the proceedings." This is a crucial step in the proceedings and counsel ought to automatically be involved. The time of sentencing is a critical stage in the criminal case and counsel's presence is necessary to ensure that the conviction and sentence are not based on misinformation or a misreading of the court record. Townsend v. Burke (1948), 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690.

Finally, the "Placement Committee" that will decide the placement is loaded in favor of the Department of Family Services. The Committee must include a representative of the Department, a representative of the County Department of Public Welfare, a youth probation officer, a mental health professional, and a representative of a school district located within the boundaries of the judicial district. The Committee is appointed by the Department of Family Services. The mental health professional is not necessarily a psychiatrist or a psychologist. He may be a professional person certified under § 53-21-106, MCA, under the provisions of ARM 11.7.401(1)(c). See Matter of J.M. (Mont. 1985), 704 P.2d 1037, 1042, (Sheehy, J., specially concurring.)

The legislature, in its overweening concern for the "appropriation of resources" (interpret as "read our lips--we will not raise taxes") has removed the power of the court to order rehabilitation for a delinquent youth and it has done so unconstitutionally.

_____
John C. Sheehy
Justice

- 13 -