No. 92-350

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN THE MATTER OF B. L. T.,
A Youth Under the Age of Eighteen.

MAY 27 1993

Cal Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Douglas G. Harkin, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

               J. Dirk Beccari, Marcia M. Jacobson, Public
               Defender's Office, Missoula, Montana

        For Respondent:

               Joseph P. Mazurek, Attorney General, Barbara Harris,
               Assistant, Helena, Montana; Robert L. Deschamps,
               III, County Attorney, Gary L. Hendricks, Deputy,
               Missoula, Montana

        Amicus:

               Ann Gilkey, Department of Family Services, Helena,
               Montana; Sue Burrell, Clark Peters, Loren Warboys,
               Youth Law Center, San Francisco, California


                              Submitted on Briefs:   April 30, 1993

                                       Decided:   May 27, 1993

Filed:

                                   Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal of an order of the Youth Court in the Fourth Judicial District, Missoula County, ordering the youth's placement at Pine Hills School for Boys until he reaches the age of eighteen years. We reverse.

The sole issue for our review is whether the Youth Court had the authority to determine the length of time B.L.T. must spend at Pine Hills School for Boys when custody was committed to the Department of Family Services.

B.L.T. was placed in Pine Hills School for Boys (Pine Hills) for the first time in January 1991. He remained there until April 4, 1991 when he was released by the Department of Family Services (Department). On December 18, 1991, a second petition was filed with the Youth Court alleging that B.L.T. was a delinquent youth because he had committed two subsequent thefts. While he was being transported to Pine Hills on January 3, 1992 to await trial on the theft charges, he and another youth escaped from the transport van in a car stolen by a third youth.

On January 9, 1992, after the prearranged escape from the transport van, the petition was amended to allege an additional count of theft and one count each of escape and criminal mischief. On May 11, 1992, pursuant to an agreement between the youth and the State, these charges were amended, alleging that B.L.T. had committed an unauthorized use of a motor vehicle, a theft by accountability, and escape. B.L.T. admitted to these charges.

The Youth Court ordered that 15-year-old B.L.T. be committed to the custody of the Department, with placement at Pine Hills

until he reaches the age of eighteen years. The Youth Court's order gave custody of B.L.T. to the Department on May 13, 1992. Section 41-5-103(17) defines "legal custody" as follows:

> (a) "Legal custody" means the legal status created by order of a court of competent jurisdiction that gives a person the right and duty to:
> (i) have physical custody of the youth;
> (ii) determine with whom the youth shall live and for what period;
> (iii) protect, train, and discipline the youth; and
> (iv) provide the youth with food, shelter, education, and ordinary medical care. (Emphasis supplied.)

B.L.T. contends that the Youth Court could not give legal custody to the Department and at the same time retain the power to control where he will live for a specified period of time. B.L.T. further contends that after the Youth Court has placed him at Pine Hills, the Department has the sole authority to determine when he is in need of less restrictive placement and is sufficiently rehabilitated to leave Pine Hills. The Youth Court's order, he argues, is more like a sentence imposed upon habitual offenders and is not in keeping with the purpose of the Youth Court Act—rehabilitation and not retribution.

The Youth Court's judgment will not be overruled unless it is clear that the court abused its discretion. In the Matter of T.A.S. (1990), 244 Mont. 259, 263, 797 P.2d 217, 220.

The Montana Youth Court Act, Title 41, Chapter 5, MCA, governs the handling of youth offenders in Montana. The Youth Court Act has a specific statement of purposes which is stated in § 41-5-102, MCA, as follows:

**Declaration of purpose.** The Montana Youth Court Act

3

shall be interpreted and construed to effectuate the following express legislative purposes:

(1) to preserve the unity and welfare of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of a youth coming within the provisions of the Montana Youth Court Act;

(2) to remove from youth committing violations of the law the element of retribution and to substitute therefor a program of supervision, care, rehabilitation, and, in appropriate cases, restitution as ordered by the youth court;

(3) to achieve the purposes of (1) and (2) of this section in a family environment whenever possible, separating the youth from his parents only when necessary for the welfare of the youth or for the safety and protection of the community;

(4) to provide judicial procedures in which the parties are assured a fair hearing and recognition and enforcement of their constitutional and statutory rights.

Before ordering the placement of a delinquent youth in a youth correctional facility, the Youth Court must determine that the youth is a serious juvenile offender and that such placement is necessary for the protection of the public. Section 41-5-523(1)(b)(ii), MCA. The Youth Court here determined that B.L.T. was a serious juvenile offender and committed him to the Department, specifying that B.L.T. be placed in Pine Hills. In making this order, the Youth Court made the requisite finding that such placement was necessary for the protection of the public.

Section 41-5-523(2), MCA, states: "When a youth is committed to the department, the department shall determine the appropriate placement and rehabilitation program for the youth . . . ." Two provisions in the Youth Court Act concern jurisdiction of the Youth Court after it has committed a youth to the Department:

**Retention of jurisdiction.** Once a court obtains jurisdiction over a youth, the court retains jurisdiction unless terminated by the court or by mandatory

4

termination in the following cases:
        (1) at the time the proceedings are transferred to adult criminal court;
        (2) at the time the youth is discharged by the department; and
        (3) in any event, at the time the youth reaches the age of 21 years.  (Emphasis supplied.)

Section 41-5-205, MCA.

> **Continuing jurisdiction of youth court.**  The youth court committing a delinquent youth or a youth in need of supervision to the department of family services retains continuing jurisdiction over the youth until the youth becomes 21 years of age or is otherwise discharged by the department after notice to the youth court of original jurisdiction.  (Emphasis supplied.)

Section 41-3-1114, MCA.  These statutes were changed significantly by the 1987 legislature.  Section 41-5-205(2), MCA (1985), previously provided that the Youth Court lost jurisdiction "at the time of commitment of the youth to the custody of the department of institutions" and § 41-3-1114, MCA (1985), previously provided:

> The youth court placing a delinquent youth or a child in need of supervision in a youth care facility retains continuing jurisdiction over the youth until the youth becomes 21 years of age or is otherwise discharged by order of the court.  (Empahsis supplied.)

The 1987 legislature enacted House Bill 325 (HB 325), which consolidated services affecting youth into the Department of Family Services.  The 1987 revisions of the above-quoted statutes reflect the expanded role of the Department in youth services and the diminished role of the youth courts.  In a joint hearing of the State Administration Committee conducted on January 23, 1987, a member of the Youth Services Study Council, speaking in support of HB 325, emphasized that services to youth were very fragmented resulting in no continuity or flexibility and that the bill would

5

dramatically change the judge's dispositional authority. Other proponents of HB 325 shared their concerns that the bill as originally drafted would limit the youth court in the disposition it could take over a youth--limiting it to either placing the youth on probation or committing the youth to the department. They felt that the youth courts should be given a little more authority. Subsequently, the legislation was amended to include the authority of the youth court to specify placement of delinquent youths to a youth correctional facility provided that the youth is first determined to be a serious juvenile offender.

The outline of HB 325 prepared prior to its consideration by the legislature contains the following statements:

> Section 54 amends 41-5-205 to allow the youth court's jurisdiction of a youth to continue until the new department discharges a youth. Currently, this statute terminates the youth court's jurisdiction at the time the youth is committed to the state. This amendment is in accordance with the Council's recommendation to alter the dispositional options available to the youth court in Section 60, but to allow the youth court to continue to be involved at the judge's discretion by extending the court's jurisdiction. Some have indicated that allowing continued jurisdiction is messy, but the Council wanted <u>to be sure that youth court judges have an obvious method to review cases if questions arise.</u>
> . . .
> Section 60 is the amendment to the dispositional options available to the youth court judge. The Council recommended that the youth court judge should have the authority to order placement of youth in need of supervision or a delinquent youth, but that the new department, which is responsible for the funding for the placement, be the party responsible to place the youth. . . . Placement advise (sic) and recommendations would become decisions by departmental staff who are currently youth court staff.
>
> 1) . . . This amendment continues all of the existing dispositional authority of the judge <u>with the exception</u> of the actual facility or home the youth is placed. Some

judges indicated that they need to be able to protect their communities from dangerous juvenile offenders. The Council then recommended that the judges be able to require a physically secure placement in the case of public safety. <u>With the definition of the "serious juvenile offender" added . . . and the amendments . . ., that recommendation is accomplished</u>. (Emphasis supplied.)

Before the consolidation of youth services into the Department of Family Services in 1987, a youth court could sentence a youth to a facility for any period of time up to the child's 21'st birthday. Section 41-2-1113, MCA (1985). The 1987 legislature repealed § 41-2-1113, MCA (1985), and the provision that the court may place a delinquent youth in a facility for any period of time up to the child's 21'st birthday is no longer a part of the Youth Court Act.

It is clear from the Declaration of Purpose of the Youth Court Act that the express legislative purposes include the removal of an element of retribution, and the substitution of a program of supervision, care, rehabilitation, and in appropriate cases, restitution. <u>Matter of T.A.S.</u>, 797 P.2d at 220. The statutes do not give to the Youth Court the specific power to fix a determinate amount of time to be served. That is consistent with the elimination of the element of retribution.

In § 41-5-106, MCA, the legislature has emphasized that the placement to a youth correctional facility shall not be deemed commitment to a penal institution, and such an adjudication shall not be deemed a criminal conviction. As stated in In the Matter of C.S. (1984), 210 Mont. 144, 146, 687 P.2d 57, 59:

A sentence of imprisonment following a criminal conviction is imposed because a particular crime was committed, and its purpose is both retributional and rehabilitational. Though a juvenile commitment is

7

usually triggered by a crime, the commitment is strictly for rehabilitation, not retribution. . . . There is more than an artificial distinction between commitment under the Youth Court Act and sentencing under the Montana Criminal Code. Thus an adult sentenced for a crime and a juvenile committed to the youth authorities are not similarly situated with respect to the purpose of their detention.

Similarly in Matter of T.A.S. 797 P.2d at 220, this Court reemphasized these points, stating:

Both the Youth Court Act and this Court have made it clear that a delinquent youth is not committed to the Department as punishment for a crime, but is committed as a delinquent youth for care, protection and rehabilitation. . . . Commitment is strictly for rehabilitation, not retribution. . . . The purpose of the Youth Court Act is "to provide a mechanism through which the state can act as the parens patriae of its youth." (Citations omitted.)

The Youth Court does have a statutorily reserved power to revoke or modify a disposition. In In the Matter of the Application of Robert Peterson on Behalf of B.S.M. (1989), 235 Mont. 313, 767 P.2d 319, 321, this Court stated:

The power of the Youth Court is not diminished through granting the Department placement power of a delinquent youth. The court has the exclusive power to sentence the youth. If the court chooses to place the youth with the Department, it is just one of the possible proper dispositions. Furthermore, the court reserves residual power, pursuant to § 41-5-523(5), which allows it to revoke or modify the disposition of the Department at any time, upon notice to the Department and subsequent hearing. This assures that the youth retains his rights in case the Department exceeds or abuses its authority.

Peterson further concluded that the youth court has authority to review Department decisions to determine if the placement is in the best interests of the minor. Peterson, 767 P.2d at 321. The Department's broad authority to fashion rehabilitation programs for youths committed to its care is not diminished when the court

8

adjudges the child a "serious offender" and specifies that the youth be placed in a state youth correctional facility under § 41-5-523(1)(b)(ii), MCA, except to the extent that the initial placement choice has already been made.

Other states with similar statutory schemes have determined that the rehabilitative goals of their juvenile offender acts require that ultimate authority over the child rest with the appropriate human services agency, not the court. In so holding, the West Virginia Supreme Court commented that "it is quite likely that a rule which would permit courts to sentence children for a definite term would confound the rehabilitation and behavior modification program of the institution." State ex rel. Washington v. Taylor (W. Va. 1980), 273 S.E.2d 84, 86. See also In re the Welfare of Lowe (Wash. 1978), 576 P.2d 65.

It is important that we emphasize the distinction between the present case and Matter of T.A.S. In Matter of T.A.S., after reviewing the theory of commitment to the Department as not being punishment for a crime but for care, protection and rehabilitation in order to provide a mechanism through which the State could act as the equivalent of a parent for the youth, this Court concluded that it was not an abuse of discretion to commit the youth to the Department until age 19. Matter of T.A.S., 797 P.2d at 220. It is important to keep in mind the broad discretion given to the Department under the Youth Court Act. When a youth is committed to the Department, the Department has the statutory power to determine appropriate placement and rehabilitation programs for the youth,

9

subject to various statutory limitations. As a result, a commitment to the Department is not equivalent to a commitment to a specific state correctional facility, such as Pine Hills. If the Youth Court in the present case had committed B.L.T. to the Department for a specified period of time, we would have approved that determination. However, there is no legislative authority granting the Youth Court the power to commit B.L.T. to Pine Hills School for Boys, a specific correctional facility, for a specified period of time.

We hold that the Youth Court did not have the authority here to determine the length of time B.L.T. should spend at Pine Hills.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

10

May 27, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


J. DIRK BECCARI and Maria M. Jacobson
Public Defender's Office
317 Woody Street
Missoula, MT  59802

HON. Joseph P. Mazurek, Attorney General
Barbara Harris, Assistant
215 N. Sanders, Justice Bldg.
Helena, MT  59620

ROBERT L. DESCHAMPS, III, County Attorney
Gary L. Hendricks, Deputy
Missoula County Courthouse
200 West Broadway
Missoula, MT  59802

Ann Gilkey, Legal Counsel
Dept. of Family Services
P.O. Box 8005
Helena, MT  59604

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy