No. 95-129

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN THE MATTER OF
A.Z.G., a/k/a A.Z.Y.,

A Youth Under the Age of Eighteen.

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Edward P. McLean, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

               Holly Jo Franz, Gough, Shanahan, Johnson
               & Waterman, Helena, Montana

        For Respondent:

               Hon. Joseph P. Mazurek, Attorney General,
               Barbara C. Harris, Assistant Attorney General,
               Helena, Montana

               Robert L. "Dusty" Deschamps III, Missoula
               County Attorney; Robert L. Zimmerman,
               Deputy County Attorney, Missoula, Montana

FILED

Filed: NOV 09 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   September 28, 1995

           Decided:   November 9, 1995

Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal of an order of the Youth Court in the Fourth Judicial District Court, Missoula County, suspending AZY's prior commitment to the Department of Family Services (DFS) and placing AZY on probation subject to AZY residing with his father. We reverse and remand for proceedings consistent with this opinion.

The dispositive issue on appeal is whether the Youth Court erred in ordering AZY's placement with his father as a condition of his probation.

## FACTS

AZY is a minor, sixteen years of age. He committed the offense of criminal mischief which, if committed by an adult, is in violation of § 45-6-101, MCA (1993), and was found to be a delinquent youth within the meaning of § 41-5-103(7)(a), MCA (1993). The Youth Court placed AZY on probation under the jurisdiction of DFS and released him into the custody of his mother. AZY's mother had been his sole custodian for the previous thirteen years. A subsequent petition was filed alleging AZY violated the conditions of his probation.

The Youth Court held a disposition hearing on the petition to revoke and committed AZY to the custody of DFS with placement at Pine Hills School for boys. The court then suspended the commitment to DFS and placed AZY on probation under the supervision of the Youth Court Probation Department with the condition that AZY

2

move to Seattle, Washington, and reside with his father. From this disposition, AZY and his mother appeal.

## DISCUSSION

Did the Youth Court err in ordering the placement of AZY with his father a condition of his probation?

AZY and his mother argue that the Youth Court exceeded its authority in placing AZY outside his home. They contend that § 41-5-523, MCA (1993), limits the Youth Court's dispositional authority if the court determines that the youth is in need of a placement other than the youth's own home.

> **41-5-523.** . . . (1) If a youth is found to be a delinquent youth or a youth in need of supervision, the youth court may enter its judgment making any of the following dispositions:
> (a)  place the youth on probation;
> (b)  commit the youth to the department if the court determines that the youth is in need of placement in other than the youth's own home, provided that:
> (i)  the court shall determine whether continuation in the home would be contrary to the welfare of the youth and whether reasonable efforts have been made to prevent or eliminate the need for removal of the youth from the youth's home. The court shall include a determination in the order committing the youth to the department.

AZY and his mother contend § 41-5-523(1)(b), MCA (1993), provides DFS with the sole authority to place a youth outside of his own home in all circumstances except when a youth is committed to a mental health facility. See also § 41-5-523(1)(j), MCA (1993). AZY and his mother argue that the Youth Court improperly removed AZY from his mother's home and her sole legal custody and placed him in the care of his father, a noncustodial parent.

3

The State agrees that if the Youth Court had committed AZY to DFS, the court could not have ordered specific placement. However, the State argues that the Youth Court placed AZY on probation pursuant to §§ 41-5-523(1)(a), -703, MCA (1993), and placed him with his father as a condition of that probation. The State stresses that there are no statutory restrictions to conditions on probation.

The State references an Arizona case where the court upheld probation that required the youth to spend weekends at a detention center while otherwise on probation and living with his parents. The Arizona court concluded that the youth court's "ability to impose conditions of probation exists even though it is not specifically set forth in the statute." In re the Appeal in Pima County Juvenile Action No. J-20705-3 (Ariz. Ct. App. 1982), 650 P.2d 1278, 1279.

AZY and his mother dispute that case's applicability here because Arizona's statutes provide for a disposition by the court where the youth may be placed with his parents subject to the supervision of the probation officer. See Ariz. Rev. Stat. Ann. § 8-241(A)(2)(a) (1994). In that case, the youth remained under the custody of his parents but was under the probation officer's supervision on weekends. Under Montana law such a disposition is not available and the case cited is inapplicable to the issue presented here.

4

The State further argues AZY has "a home" with his father. The Youth Court Act does not define "a youth's own home" as referred to in § 41-5-523(1)(b), MCA (1993). In Black's Law Dictionary, home is "[t]hat place in which one in fact resides with the intention of residence . . . ." Black's Law Dictionary 374 (ab. 5th ed. 1983). An unmarried minor child's residence is defined in § 1-1-215(4), MCA (1993), as "the residence of the parent having legal custody or, if neither parent has legal custody, the residence of the parent with whom he customarily resides . . . ."

DFS's report to the court noted AZY had not spent any length of time with his father and their contact had been inconsistent. AZY's father did not have custody of the youth and had not seen him for over a year prior to this action. In addition, we note AZY has been a full-time student in Montana's schools while residing with his mother. Therefore, we conclude that AZY's father's home is not "the youth's own home" within the meaning of § 41-5-523(1)(b), MCA (1993). Nevertheless, the State asserts that the Youth Court properly considered AZY's best interests while maintaining a family environment. In doing so, the State argues the court fulfilled the purposes of the Youth Court Act as stated in § 41-5-102, MCA (1993).

The Youth Court concluded it had the authority to place AZY with his father. We review a District Court's conclusion of law

5

for its correctness. Carbon County v. Union Reserve Coal Co., Inc. (Mont. 1995), 898 P.2d 680, 686, 52 St. Rep. 529, 533.

The 1987 amendments to the Youth Court Act, §§ 41-5-101 to -1008, MCA, expanded the role of DFS while it diminished the role of the youth courts. In the Matter of B.L.T. (1993), 258 Mont. 468, 471, 853 P.2d 1226, 1228. Prior to those amendments, the youth court had full authority over placement of youths. Section 41-5-523, MCA (1985). The amendments preserved the youth court's power to sentence the youth but granted to DFS control over the placement of the youth. In the Matter of the Application of Peterson (1989), 235 Mont. 313, 316, 767 P.2d 319, 321. In Peterson, we upheld that transfer of authority and ruled the legislature had the power to make placement of youths an administrative power. Peterson, 767 P.2d at 321.

Section 41-5-523(1)(b), MCA (1993), provides that the youth court shall "commit the youth to [DFS] if the court determines that the youth is in need of placement in other than the youth's own home . . . ." The court stated, in the record, that AZY's mother "does not have the parenting skills necessary to keep [AZY] at her residence at the present time." The court then found it was in AZY's best interest to reside with his father instead of with his mother. Thus, the court determined continuation in the home would be contrary to AZY's welfare and such a determination requires the court's committal of AZY to DFS for placement. Section 41-5-523(1)(b)(i), MCA (1993).

6

In deciding the youth's placement, DFS must review recommendations made by the youth placement committee. Section 41-5-527(1), MCA (1993). The legislature, in § 41-5-526(4), MCA (1993), specifically provided that the youth placement committee may recommend to DFS the youth's placement with his parent or other family member as an alternative to placement in a licensed facility or with a guardian. From this provision, we determine that the legislature intended placement with a non-custodial parent to be no different than any other alternative placement sites outside of the youth's own home.

We conclude that the placement of AZY outside of his mother's home was under the authority of DFS. Therefore, we hold that the Youth Court erred in ordering the placement of AZY with his father as a condition of his probation. It is important to note that the legislature revised the Youth Court Act again in 1995 and amended the language of § 41-5-523, MCA (1993), though the question of how those revisions would affect the facts of this case is not before us.

Because of our holding in this issue, we do not find it necessary to discuss the other issues raised by appellant. We reverse and remand for proceedings consistent with this opinion.

_____
Justice

7

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

Justice William E. Hunt, Sr. dissenting.

"Home" is a word with innumerable definitions, meaning different things to different people. For example, while the majority correctly quoted Black's Law Dictionary for its definition of "home", Black's also defines "home" as "the habitual abode of one's family." Black's Law Dictionary 374 (6th ed. 1990). The habitual abode of half of A.Z.G.'s family is in Seattle, and that is also his home when he is with his father.

The facts of this case support a broader definition of "home." A psychologist's examination found A.Z.G. to have a "normal amount of rebelliousness", with much of his involvement in the legal system stemming from "family conflict." Court reports from A.Z.G.'s therapists at Mountain View School indicate his problems center around the deteriorating relationship with his mother. The two have a history of unproductive conflict, which on at least one occasion resulted in law enforcement being dispatched to the mother's house. While A.Z.G. undeniably must be held responsible for his own behavior, reports to the court indicate a need for his mother to work on parenting skills and her tendency to be over-controlling. These same reports indicate the mother continually denies any involvement in her son's difficulties and refuses to recognize any need to change her own behavior.

Meanwhile, A.Z.G.'s father stands ready to take his son home to an environment free from the cycle of conflict that A.Z.G. and his mother apparently cannot escape. The father has a steady job, a stable home, and a warm and respectful relationship with his son.

9

In ordering probation, the Youth Court allowed the *family* to work on solving A.Z.G.'s difficulties without the drastic step of transferring custody of him to the State. This decision was reasonable, warranted under the specific facts of this case, and certainly did not constitute an abuse of discretion.

I also disagree with the majority's declaration that "the legislature intended placement with a non-custodial parent to be no different than any other alternative placement sites outside of the youth's own home." I am not persuaded the legislature intended the advantages and disadvantages of parental placement to be weighed equally against the advantages and disadvantages of placement with the State, as represented by an institution or a foster home. Unlike the State, a parent has constitutional rights and responsibilities to a child that have been repeatedly recognized, both by this Court and by the Supreme Court of the United States:

> The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and rights far more precious than property rights. It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.

Stanley v. Illinois (1972), 405 U.S. 645, 654, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (citations omitted). When, as here, the rights of a parent are potentially to be weighed against the rights of a third party, "it has long been the law in Montana that the right of the natural parent prevails until a showing of a forfeiture of this right." Henderson v. Henderson (1977), 174 Mont. 1, 10, 568 P.2d 177, 182 (citations omitted). Despite this settled law, the

10

majority opinion may be interpreted to excuse the State from giving greater deference to a parent than it does to a facility or institution. This case therefore sets a troubling precedent.

A.Z.G.'s mother has made a legitimate attempt to parent her son. Though laudable, her attempt apparently has not been completely successful. It was not an abuse of discretion for the Youth Court to let the father have a try. For this reason, I would affirm the judgment of the Youth Court.

_____
Justice

Justice Terry N. Trieweiler concurs in the foregoing dissent.

_____
Justice

11