

DA 08-0042

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 8

IN THE MATTER OF
C.D.H.,

     A Youth.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DJ 07-01
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Nathan J. Hoines, Attorney at Law, Great Falls, Montana

    For Appellee:

        Hon. Steve Bullock, Montana Attorney General; J. Stuart Segrest, Assistant
Attorney General, Helena, Montana

        Mary Ann Ries, Pondera County Attorney, Conrad, Montana

Submitted on Briefs:  November 19, 2008

Decided:  January 13, 2009

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 C.D.H. appeals from an order of the Ninth Judicial District Court, Pondera County, that required C.D.H. to register as a sex offender. We affirm.

¶2 C.D.H. presents the following issues on appeal:

¶3 Whether the District Court abused its discretion in requiring C.D.H., a youth, to register as a sexual offender.

¶4 Whether C.D.H. properly preserved the constitutional challenges that he raises on appeal.

¶5 Whether the District Court properly denied C.D.H.'s motion for substitution of judge.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6 C.D.H. committed several acts that if committed by an adult would have constituted a felony sex offense. C.D.H.'s four-year-old half-brother began to behave sexually in front of his mother on December 19, 2006. When C.D.H.'s step-mother questioned her son about his behavior he told her that C.D.H. had played with his private parts. C.D.H.'s step-mother and father took C.D.H. and his half-brother to Barbara Bottomly (Bottomly), a certified sexual offender treatment specialist. C.D.H., age 13 at the time of the offense, admitted to having his four-year-old half-brother suck his penis until "white pee" came out, admitted to putting a tampon into his half-brother's anus, and admitted to showing his half-brother how to masturbate with lotion.

¶7 The State charged C.D.H. as a delinquent youth on March 5, 2007. The State further charged C.D.H. with sexual intercourse without consent, in violation of § 45-5-503, MCA, and sexual assault in violation of § 45-5-502, MCA. The court appointed C.D.H. a guardian ad litem at the State's request and C.D.H. retained counsel.

2

¶8    C.D.H. timely moved for substitution of judge on March 12, 2007. The court denied C.D.H.'s motion on April 6, 2007. The court deemed C.D.H.'s delinquency proceeding a civil proceeding that required a filing fee. The court stated that a request for substitution of judge must be made in accordance with the required time constraints. The court deemed C.D.H.'s motion void for all purposes as his failure to provide a filing fee rendered his motion untimely by the date of the court's order.

¶9    The State moved for an emergency hearing on C.D.H.'s placement and conditions of his release, as he continued to exhibit sexual behaviors. The State learned that C.D.H. had accessed pornographic material over the internet during school hours. C.D.H. also continued to have access to pornography in the family home. The State reported that C.D.H. also had been suspended from school for inappropriate contact of a sexual nature with other students. Further, C.D.H.'s probation officer determined that C.D.H. remained unsupervised for extended periods of time.

¶10    The State and C.D.H. jointly recommended conditions of release, in lieu of an out of home placement, to allow C.D.H.'s therapist an opportunity to evaluate the most recent acts committed by C.D.H. C.D.H. disagreed with some of the allegations. He agreed, however, to all of the stipulations.

¶11    The court held a disposition hearing on July 5, 2007. The court considered the report prepared by Bottomly, C.D.H.'s sexual offender treatment therapist. Bottomly recommended out-patient treatment. The court agreed. The court placed C.D.H. on probation with numerous conditions jointly recommended by counsel and the juvenile probation officer. One condition required C.D.H. to be supervised at all times by an adult

who had received appropriate training in the supervision of sex offenders. The court imposed other conditions to rehabilitate C.D.H. and protect the community. The court did not require C.D.H. to register as a sexual offender.

¶12 The probation officer informed C.D.H.'s mother, after C.D.H. had been sentenced, that C.D.H. had to register as a sexual offender. The recently amended § 41-5-1513(d), MCA, requires a delinquent youth, who has been adjudicated for a sexual offense, to register as a sexual offender. C.D.H. complied with the probation officer's request and is now registered. The State posts C.D.H.'s picture and personal information on the sexual offender registry.

¶13 C.D.H. filed an ex parte motion on November 8, 2007, to delete the requirement that he register as a sexual offender. C.D.H. argued that the court should have sentenced him under the former statute and that the court, rather than his probation officer, must order registration. C.D.H.'s three-page motion asked the court to enforce the sentencing statute in effect at the time of his offense. C.D.H.'s motion lacked any constitutional arguments. C.D.H. requested an evidentiary hearing to establish his exemption from registration under the amended statute.

¶14 C.D.H. argued that the registration requirement initially had not been ordered by the court and thus was unlawful. C.D.H. conceded that the legislature intended § 41-5-1513(d), MCA, to apply retroactively. He argued, however, that retroactive application would constitute an invalid ex post facto law. The court invited C.D.H. to file a supplemental brief to address his constitutional challenges. C.D.H. chose not to file a supplemental brief and

4

informed the court that it had everything necessary to make its decision. The State agreed to an evidentiary hearing.

¶15 Bottomly testified at the evidentiary hearing on December 17, 2007, that C.D.H. had been progressing well in treatment. She opined that C.D.H. presented a low risk of reoffending. She further testified that the dispositional order placed C.D.H. under 24-hour supervision and that sufficient safeguards were in place to protect the community. Bottomly believed that C.D.H. did not pose a danger to the community and that he did not need to be registered. Bottomly also admitted, however, that she had become aware of more of C.D.H.'s victims since he had been in treatment.

¶16 C.D.H.'s additional witnesses in support of his exemption from registration included Craig Berringer (Berringer), C.D.H.'s school principal, Carey Berzel (Berzel), C.D.H.'s former teacher and neighbor, and his parents. Berringer testified that the school district had made every effort to notify potentially interested persons of C.D.H.'s offenses and to follow the conditions established in the court's dispositional order. Berringer admitted, however, that he had been unaware, until he received a telephone call, that C.D.H. had been on the playground with 9 and 10 year old children.

¶17 Berzel testified that the registration requirement would "re-victimize" C.D.H. Berzel also conceded, however, that school officials could not possibly offer constant supervision of every single child in their care. Berzel further admitted that the school district had failed to notify her that C.D.H. was not to have access to younger children at the school. Berzel had been teaching kindergarten through fifth grade at the time.

¶18    C.D.H.'s parent's testified that the court's dispositional order and accompanying newspaper articles had made their small community aware of C.D.H.'s offenses. They claim that registration was not in C.D.H's best interest. C.D.H's mother testified that C.D.H. had been sexually abused himself. She conceded that she would have wanted to have known about C.D.H.'s abuser's propensity to offend and that a website registration would have provided her with that information.

¶19    C.D.H. participated in wrestling and 4-H for several months following his offenses. C.D.H.'s mother admitted that she had failed to inform the wrestling coach, or the parents of the children participating in the wrestling, or in the 4-H programs, of C.D.H.'s offenses. C.D.H. argued that he is the only registered youth sexual offender. C.D.H. claimed that he was doing well in therapy and school and that he has been, and will continue to be, damaged by the registration requirement. The State argued simply that C.D.H. had failed to demonstrate affirmatively that registration was not necessary for protection of the public.

¶20    The court determined that C.D.H.'s risk of reoffending related directly to public safety and the public's best interest. The court concluded that Bottomly's claim that C.D.H. presented a low risk to reoffend did not constitute adequate consideration for relief from the registration requirement. The court reasoned that a low risk of reoffending nevertheless still presented a threat. The court determined that all parties, including Bottomly, had a concern of C.D.H. reoffending. The court concluded that relieving C.D.H. from the registration requirement would not be in the public's best interest. C.D.H. appeals.

**STANDARD OF REVIEW**

¶21 We review de novo conclusions of law, including statutory interpretation. *LHC, Inc. v. Alvarez*, 2007 MT 123, ¶ 13, 337 Mont. 294, ¶ 13, 160 P.3d 502, ¶ 13. We review conclusions of law to determine if they are correct. *State v. Hastings*, 2007 MT 294, ¶ 8, 340 Mont. 1, ¶ 8, 171 P.3d 726, ¶ 8. We will not overrule a youth court's judgment absent a clear abuse of discretion. *Matter of B.L.T.*, 258 Mont. 468, 470, 853 P.2d 1226, 1227 (1993). The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re A.S.*, 2006 MT 281, ¶ 24, 334 Mont. 280, ¶ 24, 146 P.3d 778, ¶ 24 (citations omitted). We conduct plenary review of constitutional law questions. *State v. LaFreniere*, 2008 MT 99, ¶ 7, 342 Mont. 309, ¶ 7, 180 P.3d 1161, ¶ 7.

## DISCUSSION

¶22 *Whether the District Court abused its discretion in requiring C.D.H., a youth, to register as a sexual offender*.

¶23 C.D.H. argues that the court abused its discretion when it required him to register as a sexual offender. The 2007 Montana Legislature amended the definition of "sexual or violent offender," as well as the statutory scheme for youth sexual offender registration. The amended definition for a "sexual or violent offender" includes a person who has been convicted of "or, in youth court, found to have committed or been adjudicated for" a sexual or violent offense. Section 46-23-502(10), MCA.

¶24 The previous statutory scheme for youth sexual offender registration allowed the court to determine if registration was necessary. *See* § 41-5-1513(1)(c), MCA (2005). The 2007 amendment requires a delinquent youth, who has been adjudicated for a sexual offense, to

7

register as a sexual offender unless the court determines that the two statutory exceptions apply. Section 41-5-1513(d)(i)-(ii), MCA. The first exception pertains to whether the youth previously had been adjudicated for a sexual offense. Section 41-5-1513(d)(i), MCA. The second exception, relevant to this appeal, considers whether registration would be necessary for protection of the public and if relief from registration would be in the public's best interest. Section 41-5-1513(d)(ii), MCA. The amendments became effective on May 11, 2007, and apply retroactively to sexual offenders who have been sentenced, or who are in the custody or under the supervision of the department of corrections, on or after July 1, 1989. *See* Compiler's Comments to §§ 41-5-1513 and 46-23-502, MCA.

¶25 C.D.H. contends that the court conceded that he met the first exception to registration in that he had no previous sexual offenses. He claims that the District Court never specifically made a finding that registration in this case served to protect the public. C.D.H. further claims that the court made erroneous findings of fact in light of the fact that the State failed to present any evidence that registration would be necessary for community protection.

¶26 The State counters that the court held two hearings to allow C.D.H. to present arguments as to whether he should be exempt from registration. The State argues that the registration requirement simply serves as a "dissemination vehicle" for information that already is public. The State contends that other means, such as through the school or local newspapers, would not be sufficient to inform the public. The State points out that the statute requires the court to determine the public's best interest, rather than C.D.H.'s best interest. The State contends that the court had ample evidence to warrant C.D.H.'s registration as a means to protect the community.

¶27 The court considered C.D.H.'s sexual evaluation and the concerns raised in it. Bottomly, C.D.H.'s sexual offender evaluator, admitted that more victims had surfaced since C.D.H.'s treatment had begun. The case involves more families in the community than C.D.H's family. The court also evaluated testimony regarding C.D.H's risk to re-offend, and the fact that the crime itself would have constituted a felony offense if an adult had committed it.

¶28 Bottomly argued that C.D.H. presented a low risk to reoffend. A low risk to reoffend would be consistent with a level 1 sexual offender. Section 46-23-509(2)(a), MCA. Section 46-23-504, MCA, calls for all sexual offenders to register, including those offenders designated as level 1. We further note that the statutory sexual offender designation levels do not provide for sub-levels within the three statutory levels. *State v. Rahn*, 2008 MT 201, ¶ 12, 344 Mont. 110, ¶ 12, 187 P.3d 622, ¶ 12. C.D.H. has failed to demonstrate sufficient mitigating factors to establish that the registration requirement imposed by the court would not be in the public's best interest. Section 41-5-1513(d)(ii), MCA. The District Court did not abuse its discretion by requiring C.D.H. to register as a sexual offender. *In re A.S.*, ¶ 24.

¶29 *Whether C.D.H. properly preserved the constitutional challenges that he raises on appeal*.

¶30 C.D.H. argues that application of the registration requirement in § 41-5-1513, MCA, would violate the prohibition on ex post facto laws. C.D.H. further argues that § 41-5-1513(d)(ii), MCA, is unconstitutionally vague. The State counters that C.D.H. failed to preserve properly his constitutional challenges on appeal by not providing the court with any

9

argument or authority in support of his ex post facto or his vagueness claims as required by *LaFreniere*. *LaFreniere*, ¶¶ 11, 13.

¶31   C.D.H. mainly argued in support of his ex parte motion to the District Court to remove the registration requirement that the court should apply the former version of § 41-5-1513, MCA. C.D.H. argued that this Court long has held "that the person must be sentenced under the statute in effect at the time of the offense." C.D.H. cited for support, our decision in *State v. Southwick*, 2007 MT 257, ¶ 25, 339 Mont. 281, ¶ 25, 169 P.3d 698, ¶ 25, and other related cases. C.D.H.'s motion made no mention of any constitutional prohibitions on application of the 2007 amendment to § 41-5-1513, MCA.

¶32   At the hearing, C.D.H. conceded that the legislature intended for the 2007 amendment to § 41-5-1513, MCA, to apply retroactively. He then argued "I think it's still an ex post facto application of the statute … this case was going on pending this legislature doing this." The court attempted to solicit further argument and authority for C.D.H's constitutional claim. The court noted that registration also was a possibility under the old statute. The court specifically asked C.D.H.: "Where is the ex post facto argument?" C.D.H. responded again that it was ex post facto as his case was pending "and just for the record judge, I would like to make that argument." The court asked C.D.H. if it should consider another brief on that point. C.D.H. responded "no, you have everything that you need to make that decision, judge."

¶33   We have held that an "objection must be specific in order to preserve the issue for appeal." *LaFreniere*, ¶ 12. An objection that is "very general in nature and which does not specify what authority, rule, statute, or constitutional provision might be violated by the

10

court's decision, is insufficient to preserve that issue on appeal." *LaFreniere*, ¶ 12. The defendant in *LaFreniere* had been sentenced without conditions imposed for probation. *LaFreniere*, ¶ 4. An amended statute authorized the court to impose probationary conditions at a later time if the court had not set them at the initial sentencing. *LaFreniere*, ¶ 10. LaFreniere argued on appeal that the retroactive application of the amendment violated the ban on ex post facto laws because the addition of probationary conditions "ultimately changes the legal consequences" and "made more burdensome his punishment for his crime." *LaFreniere*, ¶ 10.

¶34     We determined that LaFreniere had failed to preserve his ex post facto argument at the district court as he at no time had argued the issue of an ex post facto violation. *LaFreniere*, ¶ 13. Similar to C.D.H.'s claim, LaFreniere argued that "the law used by the County Attorney should not be retroactive since it was a 2005 amendment." LaFreniere did not provide any other argument or authority in support of his claim. *LaFreniere*, ¶ 13. C.D.H. seeks to distinguish *LaFreniere* on the grounds that he made a clear ex post facto argument to the District Court.

¶35     C.D.H. claims that he submitted a motion citing case law, that he argued the matter before the court, and that the court considered his arguments. As noted, however, C.D.H. cited *Southwick*, in his motion for the proposition that a person must be sentenced under the statute in effect at the time of the offense. The court invited C.D.H. to file a supplemental brief to support his constitutional arguments. C.D.H. chose not to file a supplemental brief. He instead informed the court that it had "everything that it needed" to make a decision.

¶36     *LaFreniere's* generalized objection to retroactivity failed to preserve the issue for

11

appeal. *LaFreniere*, ¶ 13. C.D.H.'s objection also must fail for this reason. Accordingly, we conclude that C.D.H. waived the argument that application of § 41-5-1513, MCA, violates the ex post facto clauses of the United States Constitution and the Montana Constitution.

¶37 We reach a similar conclusion with regard to C.D.H.'s claim that the 2007 amendment was unconstitutionally vague. C.D.H. made no mention of any vagueness problems in his motion to the court. He contended at the hearing that "this statute doesn't give the court much guidance or no guidance." He then suggested that the amendment "on its face," was "unconstitutionally vague." C.D.H. then proceeded to address the policies behind the "juvenile system." C.D.H. declined the court's invitation to file a supplemental brief on this issue. C.D.H. once again failed to preserve for appeal his claim that the 2007 amendment is unconstitutionally vague. *LaFreniere*, ¶ 13.

¶38 *Whether the District Court properly denied C.D.H.'s motion for substitution of judge.*

¶39 C.D.H. argues that the District Court improperly denied his motion for substitution of judge due to his failure to pay a filing fee. The court reasoned that a delinquency proceeding is not a criminal proceeding and therefore requires a filing fee under § 3-1-804(d), MCA. The court deemed the motion untimely and void as C.D.H. had failed to pay a filing fee within the time constraints in § 3-1-804(c), MCA.

¶40 The State proceeded against C.D.H. pursuant to the Youth Court Act set out in Title 41, Chapter 5, MCA. Section 41-5-1405, MCA, requires that the "disqualification of judges in criminal proceedings shall apply to all proceedings under this chapter." Section 41-5-

12

1405, MCA, designates youth court proceedings as criminal proceedings that allow a one time judge substitution. Section 3-1-804(d), MCA, excludes criminal cases from the filing fee requirement. C.D.H.'s motion required no filing fee.

¶41 C.D.H. proposed on appeal to remedy the court's error by requesting this Court to order the substitution of a new judge on remand for any future youth court proceedings against him. The State concedes that the court erred by denying C.D.H.'s substitution motion. The State therefore agrees with C.D.H.'s proposed remedy to substitute a new judge for any future youth court proceedings against him. C.D.H. agrees with the State, in his reply brief, that a new judge should be substituted for any future youth court proceedings against him. The parties appear to have stipulated that C.D.H. should be entitled to a new judge for any further proceedings in this matter as a remedy for the District Court's error. We agree in light of this stipulation. A new judge should preside over any future proceedings in this matter.

¶42 Affirmed.

/S/ BRIAN MORRIS


We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE