FILED

08/12/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0513

DA 23-0513

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 175

IN THE MATTER OF:

B.J.B.,

        A Youth Under the
        Age of Eighteen.

APPEAL FROM:   District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DJ-23-24
                Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Kristina Neal, Attorney at Law, Helena, Montana

        For Appellee:

        Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
        Attorney General, Helena, Montana

        Matthew C. Jennings, Missoula County Attorney, Justin Ekwall,
        Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  June 18, 2025

Decided:  August 12, 2025

Filed:

_____
                       Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 B.J.B. appeals from the July 20, 2023 Disposition Order of the Fourth Judicial District Court, Missoula County, requiring he register as a sexual offender following his admission to sexually assaulting his two younger half-siblings. We affirm.

¶2 B.J.B. presents the following issue for review:

*Whether the District Court abused its discretion by ordering B.J.B., a youth, to register as a sexual offender.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 One of B.J.B.'s younger half-siblings disclosed that B.J.B. had sexually assaulted her and her brother while babysitting. On June 20, 2023, then sixteen-year-old B.J.B. admitted to two counts of felony Sexual Assault pursuant to § 45-5-502(1), (3), MCA (2021),[1] and two counts of felony Incest, pursuant to § 45-5-507, MCA. As part of the dispositional offer, a count of felony Sexual Intercourse without Consent, pursuant to § 45-5-503, MCA, was dismissed.

¶4 B.J.B. admitted to sexually abusing his two younger half-siblings, age six John Doe and age seven Jane Doe, by touching them with his hands and penis and digitally penetrating Jane Doe with a small plastic toy. The abuse occurred between late 2021 and January 11, 2023. He admitted to using the prospect of denying television privileges while he babysat the children to coerce them into sexual contact. The District Court found B.J.B. to be a Delinquent Youth and a serious juvenile offender as defined in § 41-5-103, MCA.

---

[1] Unless otherwise specified, this Opinion refers to the 2021 Mont. Code Ann.

¶5 Prior to the July 17, 2023 dispositional hearing, the court obtained and reviewed a Psychosexual Evaluation of B.J.B., the report of the Juvenile Probation Officer, the State's sentencing memorandum, and a letter from B.J.B.'s grandmother. The Juvenile Probation Officer report recommended that B.J.B. not be required to register as a sexual offender "[u]pon successfully completing sex offender treatment[.]"

¶6 The Psychosexual Evaluation cataloged B.J.B.'s other sexual history, which consisted of heterosexual activity with three different peer-aged partners since the age of 14. One incident, referenced by the court in its oral pronouncement of disposition, occurred in a single-stall bathroom at his high school with a similarly-aged peer. His other sexual encounters occurred within the context of a more serious age-appropriate relationship and a more casual one. The Psychosexual Evaluation concluded B.J.B. presented "with the adolescent typology of sexually compulsive youth," marked by repetitive sexually arousing behaviors that become compulsive and addictive in nature and often coexisting with an "underlying depressive and or anxiety disorder." A Juvenile Sex Offense Recidivism Risk Assessment Tool-II score indicated B.J.B. was "consistent with a moderate-high risk to reoffend sexually[,]" as did an Estimate of Risk of Adolescent Sexual Offense Recidivism, which indicated B.J.B. was consistent for a predictor of moderate risk to sexually reoffend. The combined results presented "a moderate risk to repeat sexually compulsive behaviors." The evaluation concluded with the recommendation B.J.B. not be required to register as a sexual offender to allow him "the best opportunity to develop into a productive young adult, unimpeded by stigma[.]"

¶7     At the hearing, the court heard testimony and victim impact statements from the mothers[2] of both victims, Jane Doe's therapist, a family friend, and Jane Doe's grandparents. All spoke to the siblings' trauma from the abuse and advocated for imposing a registration requirement.

¶8     After hearing victim impact testimony, the court heard the dispositional recommendations. The State recommended a suspended Department of Corrections (DOC) commitment to Pine Hills Youth Correctional Facility (Pine Hills) until B.J.B. turned 18, followed by probation through Youth Court until age 21. The State recommended B.J.B. register as a sex offender based on his age, his position of trust to the victims, and the fact that there were multiple victims and multiple instances. B.J.B.'s defense counsel joined most of the State's recommendations, noting B.J.B.'s cooperation with investigators, his sincere understanding of the magnitude of the trauma his half-siblings suffered, and his lack of a previous record involving sexual misconduct. B.J.B.'s attorney disagreed with the State's recommendation he register as a sexual offender, instead requesting the court follow the psychosexual evaluator and the youth probation office's recommendations not to require B.J.B. register as a sexual offender, noting that the court could later order registration should B.J.B. fail to complete sexual offender treatment or violate the conditions of his probation. B.J.B. then spoke to the court, expressing contrition for his abuse and apologizing to his siblings and their mothers.

---

[2] John Doe, Jane Doe, and B.J.B. have different mothers, but all three share the same father.

¶9 The court advised B.J.B. of the probability of deviating from the stipulated recommendation by indicating it would sentence him to a duration of incarceration at Pine Hills. After the court afforded B.J.B. an opportunity to withdraw his admissions on this basis, B.J.B. elected to proceed to disposition. The District Court then issued its order. First, the District Court committed B.J.B. to the DOC until the age of 18, with a recommended placement to Pine Hills. Second, the court ordered the suspension of the remainder of B.J.B.'s DOC commitment once B.J.B. reached the age of 17, whereupon B.J.B. would be placed on probation under the supervision of the Youth Court Probation Department until the age of 21. Third, the court ordered community service and restitution to Jane Doe.

¶10 Additionally, the court imposed a series of rules and regulations on B.J.B., including, relevant here, designating B.J.B. a Tier 2 Sexual Offender pursuant to § 41-5-1513(1)(d)(ii), MCA, and Title 46, Chapter 23, Part 5, MCA, consistent with the moderate risk of recidivism found by the Psychosexual Evaluation. In its oral pronouncement, the court ordered B.J.B. indefinitely "register as a sex offender for as long as the law requires it to be done." The court noted B.J.B.'s sexual conduct at school, characterizing the behavior as "a concern." Further, the court adopted the registration requirement because "this crime was a crime that was committed against two defenseless young children and involved use of threats of [. . .] deprivation of privileges[.]" Because B.J.B. had abused children under his temporary care, the court reasoned registration would serve to protect the public should B.J.B. "decide[] to become a coach or a teacher or a boy

5

scout leader or [. . .] a life guard at the swimming pool" later in his life. Unable to predict whether B.J.B. might become involved in activities or an occupation which would bring him into contact with children, the court stated registration would provide a "public warning" if "counseling and treatment" fail. In its written order, the District Court reiterated the registration requirement was "for the protection of the public and in the public's best interest considering the nature of the offenses admitted, which involved offenses against two defenseless young children and an abuse of a position of responsibility." B.J.B. now appeals the requirement he register as a sexual offender.

## STANDARD OF REVIEW

¶11    We review de novo conclusions of law, including statutory interpretation. *In re C.D.H.*, 2009 MT 8, ¶ 21, 349 Mont. 1, 201 P.3d 126. We review conclusions of law to determine if they are correct. *In re C.D.H.*, ¶ 21. We will not overrule a youth court's judgment absent a clear abuse of discretion. *In re C.D.H.*, ¶ 21 (citing *In re B.L.T.*, 258 Mont. 468, 470, 853 P.2d 1226, 1227 (1993)). A court abuses its discretion if it acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. *In re C.D.H.*, ¶ 21 (citation omitted).

## DISCUSSION

¶12    Section 41-5-1513(1)(d), MCA, provides, "in the case of a delinquent youth who has been adjudicated for a sexual offense[,] the youth is exempt from the duty to register as a sexual offender" pursuant to Title 46, chapter 23, part 5, MCA. However, the court may require the delinquent youth register as a sexual offender "if the court finds that the

6

youth has previously been found to have committed or been adjudicated for a sexual offense" or "registration is necessary for protection of the public and that registration is in the public's best interest." Section 41-5-1513(1)(d)(i)-(ii), MCA. A sexual offender required to register "shall register for the remainder of the offender's life" unless otherwise provided by the statute. Section 46-23-506(1), MCA. A Level 2 Sexual Offender is of moderate risk of repeat sexual offense. Section 46-23-509, MCA. A Level 2 sexual offender may petition for relief from the duty to register after 25 years of registration. Section 46-23-506(3), MCA. However, a petition for relief is unavailable if, as here, the offender had committed a violation of incest under § 45-5-507, MCA, and the victim "was under 12 years of age and the offender was 3 or more years older than the victim[.]" Section 46-23-506(5)(b), MCA. Thus, the District Court's Order imposes a lifetime sexual offender registration requirement on B.J.B.

¶13 As B.J.B. had not been previously committed or adjudicated for a sexual offense, the relevant inquiry becomes whether the District Court abused its discretion in finding that registration is necessary for the protection of the public and serves the public's best interest. When a youth has been adjudicated for a sexual offense, § 41-5-1513(2), MCA, requires the youth court to order a psychosexual evaluation, designate the youth's risk level pursuant to § 46-23-509, MCA, and order completion of sexual offender treatment.[3]

---

[3] Section 41-5-1513(2)(d), MCA, imposes an additional requirement for a youth designated a "level 3 offender." Because B.J.B. was designated Level 2, this subsection is not relevant to the instant case.

¶14 Here, the court ordered a Psychosexual Evaluation and considered the report before proceeding to disposition. The two tests employed as part of the Psychosexual Evaluation contained similar results finding B.J.B. a moderate risk to reoffend. The District Court's designation of B.J.B. as a Level 2 sexual offender finds support in the Psychosexual Evaluation. Regardless of the recommendation contained within the Psychosexual Evaluation that B.J.B. not be required to register, the evaluation still found B.J.B. met the criteria of a Level 2 Sexual Offender with a moderate risk to reoffend. Section 46-23-509(b), MCA.

¶15 The District Court also satisfied the requirements of § 41-5-1513(2), MCA, by setting forth its findings and reasoning for imposing registration. During oral pronouncement, the court explained:

> I am going to order that you will be required to register as a sex offender for as long as the law requires it to be done, and I have considered the ramifications of that. But my concern is—and the reason I asked you if you had any outside activities is because I was interested if you had dealings with things that might get you in contact with young people after you turn 21. And you might. I don't have a crystal ball, so I don't know where you're going.
>
> I think this crime was a crime that was committed against two defenseless young children and involved use of threats of, you know, at least deprivation of privileges and things of that sort. And I think it's—the public has a right to be protected. Because if you decided to become a coach or a teacher or a boy scout leader or, you know, a life guard at the swimming pool, or whatever, and something happened and, you know, I didn't make you register, I can see that the public would be distraught that we allowed some known sexual predator out loose on the community without warning. And this is the kind of crime that I think deserves public warning to the public so that they have an inkling of this.

8

> I hope none of those things ever happen. I hope that this counseling and treatment works, but I'm not willing to take a chance for the protection of the public.

In the District Court's written disposition, it also provided its reasons for imposing a registration requirement:

> Registration as a sexual offender is necessary for the protection of the public and in the public's best interests considering the nature of the offenses admitted, which involved offenses against two defenseless young children and abuse of a position of responsibility, and the other evidence presented to the Court. The Court finds that public warning is necessary and expected for offenses of this nature.

¶16 Upon review of this record we are convinced that the District Court considered the offenses and relevant evidence, including the Psychosexual Evaluation, the testimony from the victims and other witnesses, the investigation prepared by the Juvenile Probation officer, and B.J.B.'s statements to the court. It was for the District Court to exercise its discretion, after hearing the testimony and considering all evidence, to decide whether requiring B.J.B. to register was necessary to protect society.

¶17 We addressed similar arguments in *In re C.D.H.* There, the district court ordered a delinquent youth who met the Level 1 sexual offender criteria to register as a sexual offender after considering the psychosexual evaluation and the widespread impact to the victims of C.D.H.'s abuse, as well as new victims who emerged during the proceedings. *In re C.D.H.*, ¶¶ 27-28. After two hearings on the matter, the district court determined that C.D.H. presented insufficient evidence to overcome the presumption his registration was necessary to protect the public. *In re C.D.H.*, ¶¶ 26, 28. We affirmed the district court's disposition requiring C.D.H. register as a sexual offender because the court considered the

relevant facts, entered its findings into the record, and registration was consistent with statutory requirements. *In re C.D.H.*, ¶ 28.

¶18 B.J.B. correctly notes the Legislature modified § 41-15-1513, MCA, since our decision in *In re C.D.H.*. 2017 Mont. Laws ch. 208, § 1. Pursuant to § 41-15-1513(1)(d), MCA (2007), operable in *In re C.D.H.*, delinquent youths who had been adjudicated for a sexual offense were *required* to register as a sexual offender *unless* the youth had not previously been found to have committed or been adjudicated for a sexual offense, or the registration requirement would not be necessary for the protection of the public. Thus, in prior versions of the statute, the court retained discretion to make findings that the youth should be exempt from the registration requirement. Section 41-15-1513(1)(d), MCA (2007). Under the relevant version of § 41-15-1513(1)(d), MCA (2021), the exemption has been reversed: the youth is *exempt* from the duty to register *unless* certain findings are made *by the court* as to the youth's previous sexual misconduct or the necessity of protecting the public. The statute retains the court's discretionary power to require registration once those findings are made. Section 41-15-1513(1)(d), MCA. The revisions to the statute since *In re C.D.H.* only shifted the burden from the youth to prove exemptions from registration applied, to the court. Now the court has the obligation to make findings that the exemption in § 41-15-1513(1)(d), MCA, should not apply.

¶19 Here, B.J.B. argues he should not be required to register because he has taken accountability for his actions, is amenable to treatment, and lacks any criminal or disciplinary history. He emphasizes that the sexual offender evaluator and the juvenile

probation officer both recommended the court not impose a registration requirement. However, the court must make findings as to the public's best interest, not B.J.B.'s best interest. *In re C.D.H.*, ¶ 26. The evidence presented at the dispositional hearing demonstrated that B.J.B. had sexually abused his younger half-siblings while babysitting them, betraying his responsibility toward them. The Psychosexual Evaluation concluded B.J.B. was of a moderate risk to reoffend, consistent with a Level 2 Sexual Offender. The District Court noted this evidence when it required registration, both in its oral pronouncement and in its written order. The court noted the possible danger to the community if B.J.B. is exempt from registering as a sexual offender and the public was not given notice through the sexual offender registry.

¶20 B.J.B. further argues the district court focused only on the nature of the offenses and impermissibly disregarded the expert opinions which recommended against registration. He relies on *State v. Johnson*, 2023 MT 167, 413 Mont. 202, 534 P.3d 676, where we held that a district court abused its discretion by relying "*purely* on the egregious facts of the offense" and misapprehending the mitigating factors presented by the defendant when it refused to transfer a juvenile case filed directly in district court to youth court. *Johnson*, ¶ 28 (emphasis in original). However, we cannot draw a similar conclusion here that the District Court misapprehended the mitigating evidence. While both Juvenile Probation and the Psychosexual Evaluation recommended against registration, there was no dispute that B.J.B. was designated a Level 2 Sexual Offender, a designation that identified B.J.B. as having a moderate risk of reoffending. The Psychosexual Evaluation identified B.J.B.

as a "sexually compulsive youth," but recommended against registration because it was in the best interests of B.J.B. The District Court, however, was concerned with protection of the community. Accordingly, the District Court accepted portions of the Psychosexual Evaluation and the investigation by Juvenile Probation and did not disregard the findings of these experts in requiring B.J.B. register as a sexual offender; it merely considered their reports in the context of its obligations pursuant to § 41-15-1513(1)(d), MCA, which included safety of the community.

¶21 Our review of the record here leaves us convinced that the registration requirement is supported by substantial evidence. The court considered the relevant evidence, including the expert reports, and relied on that evidence in making its finding that registration would serve the public's best interest. The outcome of this appeal necessarily turns on the standard of review, which is abuse of discretion. We are not free to displace the trial court's discretion with ours because we would have come to a different result. Based on this record, we cannot conclude that the District Court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. Accordingly, the District Court correctly applied the law and did not abuse its discretion in requiring B.J.B. to register as a sexual offender.

## CONCLUSION

¶22 The court's findings are substantially supported by the record. The court correctly interpreted the requirements of § 41-5-1513(2), MCA, and understood the obligations

placed on it by § 41-5-1513(2), MCA.  The District Court's order requiring B.J.B. register as a sexual offender is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

Justice Ingrid Gustafson, concurring.

¶23   I concur, given the standard of review, that the District Court did not abuse its discretion in requiring B.J.B. to register as a sexual offender.  While the District Court could have weighed the expert evidence presented in the Psychosexual Evaluation and the Presentence Report recommending B.J.B. not be required to register as a sexual offender unless he failed to complete sexual offender treatment or violated the terms of his probation to not impose a lifetime sexual offender registration requirement differently, it did not.  Instead, the District Court, in exercising its broad discretion, weighed the past circumstances of the offenses and characteristics of the victims to be in favor of a lifetime registration requirement.  While I cannot conclude, under this record, that the District Court abused its discretion, I write to express concern as to the potential collateral consequences of sexual offender registration and to urge thorough consideration of such as imposition of

13

sexual offender registration could indeed, contrary to its goal, increase, rather than decrease, recidivism rates.

¶24    During the 1990s and 2000s, sex offender registration laws swept across the country—generally known as Megan's laws.[1]  The aim of these laws was to reduce sex offender recidivism.  While well-intended, unfortunately these laws have not brought the results hoped for and have further resulted in unintended consequences not anticipated when enacted.  Research demonstrates these laws generally do not reduce recidivism and unintended consequences have been unearthed:

> Notification regimes also seem to influence sex offense frequency, although not as lawmakers had intended.  Notification laws reduce the number of sex offenses when the size of the registry is small, but these benefits dissipate as more offenders become subject to notification requirements.  This finding accords with the idea that notification can deter nonregistered individuals, but that it encourages recidivism among registered offenders, perhaps because of the psychological, social, and financial harms they suffer from the public release of their criminal history and personal information.  Indeed, for a registry of average size, instituting a notification regime has the aggregate effect in these data of increasing the number of sex offenses by more than 1.57 percent, with all deterrence gains more than offset.

J.J. Prescott, *Do Sex Offender Registries Make Us Less Safe?,* Cato Institute (2012), https://perma.cc/A7GB-LXYG.

¶25    Since their enaction, several states have studied the effectiveness of their sexual offender registries.  Overall, the data conclusively show registries do not impact recidivism rates.  Various theories as to why include:  Sex offenders have low reoffending rates

---

[1] In 1994, 7-year-old Megan Kanka was sexually assaulted and then killed by a convicted sex offender, who, unbeknownst to the Kankas, lived nearby.  In 2006, the Sex Offender Registration and Notification Act (SORNA) was enacted by Congress which required all states to maintain an online, searchable database of convicted sex offenders.

(13.7%) compared to other violent crimes; 93% of sex crimes against children are committed by someone known to the victim; 95% are committed by someone who would not be on a sex offender registry; research suggests sexual offender registries increase recidivism by destabilizing the offender by making it more difficult to find employment and housing, and makes it harder to be with or build their own families as they reintegrate into a community; and sexual offender registries are rife with error (from 10-75% of all entries contain factual error). Elizabeth L. Jeglic, *Sex Offender Registries*, Psychology Today (2019), https://perma.cc/URA6-Y7KA.

¶26 Given the research and what has been learned about the lack of effectiveness of sexual offender registration, it is understandable that the Legislature modified § 41-5-1513(1)(d), MCA, to exempt youth from registration unless certain findings are made by the court as to the youth's previous sexual misconduct or the necessity of protecting the public. In making these findings, I would urge courts not to merely parrot the statutory language but to carefully consider the youth's potential for rehabilitation together with the unintended consequences of registration. Felony sex offenses against minors by their nature are abhorrent offenses, but § 41-5-1513(1)(d)(i)-(ii), MCA, provides that commission of a sexual offense against a minor by itself does not warrant registration—there must be something more such as previous sexual misconduct (not present here) or articulable public safety concerns beyond merely conviction of a sexual offense against a minor. Basing a registration requirement on the general egregious nature

of sexual offenses against children as requiring registration may very well work to destabilize the offending youth and ultimately reduce, rather than enhance, public safety.

/S/ INGRID GUSTAFSON